**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____
                              :
DAVION CURRIER,               :
                              :    Civil Action
          Petitioner,         :    No. 08-3217 (WJM)
                              :
     v.                       :    **O P I N I O N**
                              :
PETER D. KEISLER, et al.,     :
                              :
          Respondents.        :
_____:

**APPEARANCES:**

> DAVION CURRIER, Petitioner pro se
> Alien ID. #96644419; Prison ID. #207981
> Hudson County Correctional Center
> Kearny, New Jersey  07032

**WILLIAM J. MARTINI, District Judge**

On June 26, 2008, the Clerk received the instant Petition for a Writ of Habeas Corpus ("Petition"). The Petition, filed pursuant to 28 U.S.C. § 2241, by Petitioner DAVION CURRIER ("Petitioner"), a native of Jamaica, who is currently detained at Hudson County Correctional Center, Kearny, New Jersey, seeks Petitioner's release from detention by the Department of Homeland Security (hereinafter "DHS").[1]

---

[1] The Homeland Security Act of 2002, 6 U.S.C. §§ 101-557, P.L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department

The Petition was received unaccompanied by either the applicable filing fee of $5.00 or Petitioner's application to proceed in this matter in forma pauperis.

Petitioner, a convicted felon[2] under an order of removal that was issued by Petitioner's immigration judge on December 3, 2007, see Docket Entry No. 1, at 3, 14-16, asserts that he is being held in custody in violation of the applicable federal statutes, as clarified in Zadvydas v. Davis, 533 U.S. 678 (2001), see id. at 6-8, and that his due process rights are denied because the DHS elected not to release Petitioner from custody while he is awaiting his removal to Jamaica, which, in Petitioner's opinion, indicates that the DHS is not an impartial decision maker.  See id. at 8.

Having thoroughly examined Petitioner's submission, this Court dismisses the Petition.

## JURISDICTION

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . he is in custody in violation of

---

of Homeland Security.  See 6 U.S.C. § 271(a).  The Act transferred the functions of the Commissioner of the Immigration and Naturalization Service ("INS") to the Director of BCIS, see 6 U.S.C. § 271(b), and abolished INS.  See 6 U.S.C. § 291. Accordingly, DHS replaced INS on March 1, 2003.

[2] Petitioner had three felony convictions for offenses that include, inter alia, illegal possession of firearm, aggravated assault, possession and sales of such illegal controlled substances as heroin and cocain, contempt of judicial order, and resisting arrest.  See Docket Entry No. 1, at 10, 11.

the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody" and (2) the custody could be "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); <u>Maleng v. Cook</u>, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the instant Petition under § 2241 because Petitioner was detained within its jurisdiction at the time he filed his Petition and he asserts that his detention is not statutorily authorized and violates his constitutional rights. <u>See</u> <u>Zadvydas</u>, 533 U.S. at 699.

## **DISCUSSION**

### I. **Propriety of Petitioner's Current Detention**

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States. The "removal period" starts on the latest of the following: (1) the date when the order of removal becomes *administratively final* (that is, appeal to the BIA was either taken and ruled upon or the time to appeal expired); or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from confinement. <u>See</u> 8

U.S.C. § 1231(a)(1)(B).

Here, Petitioner asserts that his immigration judge ordered him removed on December 3, 2007. See Docket Entry No. 1, at 4. The Petition is silent as to whether Petitioner appealed his removal order to the BIA and the courts. See generally, id. Construing, for the purposes of temporal calculations, this silence in the fashion most favorable to Petitioner, this Court presumes that no appeal was taken, and Petitioner's removal order became final, by operation of law, 30 days after Petitioner's immigration judge issued the order of removal, that is, on January 2, 2008, hence triggering--on January 3, 2008---Petitioner's statutory removal period, see 8 U.S.C. § 1231(a)(1)(B), during the 90 days of which Petitioner had to be detained. See id. § 1231(a)(2).

Moreover, after the 90-day statutory removal period expired, the government has been having discretion to detain Petitioner during Petitioner's "presumptive period." See id. § 1231(a)(6). In Zadvydas, the Supreme Court held that aliens may be detained under § 1231(a)(6) for "a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689 (holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States [and] does not permit indefinite

detention").³

Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts" recognized a six-month "presumptively reasonable period of detention." Zadvydas, 533 U.S. at 700-01. Thus, under the holding of Zadvydas, Petitioner's detention has been legal for the six months starting January 4, 2008, that is, as of the date of his execution of his Petition and even as of the date of this Opinion and accompanying Order. See id.

Furthermore, coining the "presumptively reasonable period of detention," the Supreme Court stressed that,

> [a]fter this 6-month period, o[nly if] the alien provides *good reason to believe* that there is no significant

---

³

Furthermore, the Supreme Court clarified that,

> [a]fter this 6-month period, [only if] the alien provides *good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

533 U.S. at 701 (emphasis supplied).

>  likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. *This 6-month presumption, of course, does not mean that every alien not removed must be released after six months*. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701 (emphasis supplied).

Here, Petitioner submitted a letter he received from the DHS informing Petitioner that the government

> is currently working with the Embassy of Jamaica to obtain a travel document to effect [Pettitioner's] removal from the United States. [The government] expects that the travel document will be issued for [Petitioner] and that [his] removal will occur in the reasonably foreseeable future.

Docket Entry No. 1, at 11.

The statement unambiguously indicates that Petitioner's removal is forthcoming. Petitioner counters this statement merely by his bold conclusion that his removal is not foreseeable within reasonable future because, thus far, Petitioner has not been removed. See id. at 7. However, Petitioner does not assert that Jamaica refuses to accept it citizens, or that the country is in such state of civil unrest that there is no government capable of effectuating acceptance of citizens, or that Jamaica expressly refused to accept Petitioner personally. See generally, Docket Entry No. 1. All he is asserting is that his removal is not

reasonably foreseeable simply because he was not removed *prior* to the expiration of his presumptive Zadvydas period. Such self-serving allegations, however, cannot meet Petitioner's burden of "provid[ing a] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. Consequently, Petitioner's instant Petition should be denied as to his claims asserting illegal confinement.

Petitioner's allegations asserting denial of procedural due process fare no better. Here, the submission made by Petitioner shows that he was provided with timely administrative reviews of his case, see Docket Entry No. 1, at 6, 10-11. While Petitioner asserts that these administrative reviews denied him impartial forum, Petitioner does not state any fact suggesting impartiality; rather, his conclusions are based solely on his personal disappointment with the government's decision not to release him. However, Petitioner's disappointment with an outcome of an administrative review has no bearing on Plaintiff's due process rights. See Thrower v. N.J. Dep't of Corr., 2007 U.S. Dist. LEXIS 66252 (D.N.J. Sept. 6, 2007) (clarifying that allegations fail to state a cognizable due process claim if the plaintiff's argument is, effectively, limited to his disagreement with the outcome of an administrative decision) (relying on Coades v. Kane, 1992 U.S. Dist. LEXIS 8844 (E.D. Pa. May 22, 1992)). Moreover, Petitioner's

convictions that include resistance to arrest and contempt of a judicial order, see Docket Entry No. 1, at 10-11, indicate that the government's decision was rational and well reasoned.

Consequently, Petitioner does not qualify for a writ of habeas corpus, since his Petition indicates that Petitioner's presumptive removal period under Zadvydas has not expired as of the date of his filing of the Petition or even as of the date of issuance of this Opinion and accompanying Order, and Petitioner's procedural due process rights have not been violated.

## II. **Petitioner's Failure to Submit His Filing Fee or IFP**

The "revised [Habeas] Rule 3(b) requires the [C]lerk to file a petition, even though it may otherwise fail to comply with [Habeas] Rule 2. The [R]ule . . . is not limited to those instances where the petition is defective only in form; the [C]lerk [is] also required . . . to file the petition even though it lack[s] the required filing fee or an in forma pauperis form." 28 U.S.C. § 2254, Rule 3, Advisory Committee Notes, 2004 Am.

However, Section 1914, the filing fee statute, provides in relevant part that "the clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court . . . to pay a filing fee of $ 350 except that on application for a writ of habeas corpus the filing fee shall be $ 5." 28 U.S.C. § 1914(a). The accompanying provision, Section

1915, governs applications filed <u>in forma pauperis</u> and provides, in relevant part, that leave to proceed <u>in forma pauperis</u> may be granted in any suit to a litigant "who submits an affidavit that includes a statement of all assets such [litigant] possesses [if such affidavit demonstrates] that the [litigant] is unable to pay such fees or give security therefor."  28 U.S.C. § 1915(a)(1); <u>see also</u> <u>Smith v. Bennett</u>, 365 U.S. 708, 712, 81 S. Ct. 895, 6 L. Ed. 2d 39 (1961) ("[W]hile [$ 5] is . . . an 'extremely nominal' sum, if one does not have it and is unable to get it[,] the fee might as well be [$ 500]"); <u>Clay v. New York Nat'l Bank</u>, 2001 U.S. Dist. LEXIS 3209, at *1 (S.D.N.Y. Mar. 21, 2001).

Therefore, within thirty days from the date of entry of the Order accompanying this Opinion, Petitioner must submit his filing fee of $5.00 or his affidavit of poverty, regardless of the outcome of this litigation.[4]  <u>Cf.</u> <u>Kemp v. Harvey,</u> 2006 U.S. Dist. LEXIS 8939, at 18 n.6 (D.N.J. Mar. 3, 2006) (observing that "it would be indeed anomalous to allow persons [stating no cognizable claim] to usurp judicial resources and bring claims without payments while

---

[4] The Court expressly notifies Petitioner that his failure to submit the filing fee or his <u>in forma pauperis</u> application in a timely fashion will entitle the Clerk to institute action for collection of the fee for this action in light of Petitioner's implied consent to such collection through Petitioner's filing of the instant Petition.  <u>Accord</u> <u>York v. Ala.</u>, 2006 U.S. Dist. LEXIS 72160, at *2 n.2 (M.D. Ala. Apr. 18, 2006); <u>Valles v. O'Sullivan</u>, 1998 U.S. Dist. LEXIS 11071, at *2 (N.D. Ill. July 13, 1998) (directing trust fund officer to collect the fee from the inmate's prison trust fund account).

obligating every litigant [stating a cognizable claim] to pay the fee").

## CONCLUSION

Petitioner's application for a writ of habeas corpus under § 2241 will be denied.[5]  Petitioner will be directed to submit his filing fee or his application to proceed in this matter in forma pauperis.

An appropriate Order accompanies this Opinion.

                s/William J. Martini
                **WILLIAM J. MARTINI**
                **United States District Judge**

Dated: July 2, 2008

---

[5] This Court notes that Petitioner is free to file another § 2241 petition should, after expiration of his Zadvydas presumptive period, Petitioner develops good *evidence-based* reasons to believe that his removal is no longer reasonably foreseeable.